Citation Nr: 1554542
Decision Date: 12/04/15 Archive Date: 01/15/16

DOCKET NO. 06-03 199 ) DATE DEC 04 2015


On appeal from the Department of Veterans Affairs Regional Office in Jackson, Mississippi


THE ISSUES

1. Entitlement to service connection for chest pains. 

2. Entitlement to service connection for hypertension.


REPRESENTATION

Appellant represented by: The American Legion


WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

C. Eckart, Counsel


INTRODUCTION

The Veteran served as a member of the National Guard from 1976 to 2004, including periods of active duty service from July 1976 to November 1976 and January 2003 to April 2004. 

This case comes before the Board of Veterans’ Appeals (Board) on appeal from a February 2005 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Jackson, Mississippi.

The Veteran provided testimony during a hearing before the Board at the RO in March 2012. A transcript of that hearing is of record. 

This matter was remanded multiple times for development beginning in July 2008, along with additional claimed issues that were either granted by the RO or by the Board following further development. The remaining appellate issues of service connection for chest pain and hypertension were most recently remanded in February 2014 for additional development. 

The Board’s February 2014 determination is noted to have referred issues of service connection for asthma and depression and entitlement to pension benefits to the Agency of Original Jurisdiction (AOJ) for appropriate action. As no further action is shown to have been undertaken the Board again refers these matters to the AOJ for appropriate action.


FINDINGS OF FACT

1. The preponderance of the evidence does not reflect there to be a separate disability manifested by chest pain for which VA benefits can be granted.

2. Hypertension is shown by medical evidence have been present prior to the Veteran’s entering active service in January 2003; an entrance examination for this period of service is not shown to be of record. 
 
3. The Veteran’s hypertension clearly and unmistakably pre-existed his period of service and clearly and unmistakably was not aggravated during his period of service from January 2003 to April 2004. 


CONCLUSIONS OF LAW

1. Service connection is not warranted for chest pain. 38 U.S.C.A. §§ 1110, 1131, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.159, 3.303 (2015).

2. Hypertension was not incurred in or aggravated by service. 38 U.S.C.A. §§ 1101, 1110, 1111, 1131, 1137, 1153, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.306, 3.307, 3.309 (2015).



REASONS AND BASES FOR FINDINGS AND CONCLUSION

I. Veterans Claims Assistance Act of 2000 (VCAA)

The VCAA describes VA’s duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2015).

Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and his representative, if any, of any information, and any medical or lay evidence, that is necessary to substantiate the claim. 38 U.S.C.A. § 5103(a) (West 2014); 38 C.F.R. § 3.159(b) (2015); Quartuccio v. Principi, 16 Vet. App. 183 (2002). Proper VCAA notice must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) must ask the claimant to provide any evidence in his possession that pertains to the claim in accordance with 38 C.F.R. § 3.159(b)(1) . VCAA notice should be provided to a claimant before the initial unfavorable rating decision on a claim. Pelegrini v. Principi, 18 Vet. App. 112 (2004); see also Mayfield v. Nicholson, 19 Vet. App. 103 (2005), rev’d on other grounds, 444 F. 3d 1328 (Fed. Cir. 2006).

The Board finds that VA has substantially satisfied the duties to notify and assist, as required by the VCAA. The record indicates that the appellant was provided notice in miscellaneous letters sent to him from the RO over the course of this appeal. These letters informed the appellant that VA would assist him in obtaining any documents that it was made aware thereof that would assist in the decision-making process of the claim. He was further told that he could proffer any documents or statements in support of his claim, and that all items would be considered when a decision on the merits of his claim was made. He was also informed how a disability rating is determined and the basis for determining an effective date upon the grant of any benefit sought, in compliance with the holding in Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006).

All that the law requires is that the duty to notify is satisfied and that claimants are given the opportunity to submit information and evidence in support of their claims. Once this has been accomplished, all due process concerns have been satisfied. See Bernard v. Brown, 4 Vet. App. 384 (1993); Sutton v. Brown, 9 Vet. App. 533 (1996); see also 38 C.F.R. § 20.1102 (2015) (harmless error). In view of the foregoing, the Board finds that the appellant was notified and aware of the evidence needed to substantiate his claim, as well as the avenues through which he might obtain such evidence, and of the allocation of responsibilities between himself and VA in obtaining such evidence. Accordingly, there is no further duty to notify.

VA also fulfilled its duty to assist. In this instance, VA obtained the appellant’s available medical treatment records, including requesting any treatment records from the facilities the appellant had been treated by including VA and Social Security Administration (SSA) records, and those other records that VA was made aware thereof. Given the foregoing, the Board finds that VA has substantially complied with the duty to procure the necessary medical and other records. Attempts have been made to fully verify all periods of active service and obtain complete service treatment records, with the Board noted to have remanded this matter multiple times in part to afford such development. Available service personnel records and service treatment records have been obtained, and an April 2015 memo has confirmed an inability to obtain complete service treatment and personnel records, with the prior steps taken to do so detailed and a notation that as of that month, the Veteran had not responded to a request to provide additional evidence pertaining to his service. The Board is mindful that, in a case such as this, where service treatment and personnel records are unavailable, there is a heightened obligation to explain our findings and conclusions and to consider carefully the benefit-of-the-doubt rule. O’Hare v. Derwinski, 1 Vet. App. 365, 367 (1991); Pruitt v. Derwinski, 2 Vet. App. 83, 85 (1992). Although it is unfortunate that the Veteran’s complete service treatment records are unavailable, the appeal must be decided on the evidence of record and, where possible, the Board’s analysis has been undertaken with this heightened duty in mind.

Additionally, VA is obliged to provide an examination when the record contains competent evidence that the claimant has a current disability or signs and symptoms of a current disability, the record indicates that the disability or signs and symptoms of disability may be associated with active service; and the record does not contain sufficient information to make a decision on the claim. 38 U.S.C.A. § 5103A(d) (West 2014). 

The appellant has undergone two VA examinations with respect to his claimed disorders, and those examination results are of record. Together the examination reports provided an accurate history of the appellant’s condition. More importantly, the opinions provided were well supported by a rationale. As such, the Board finds that the examinations are adequate for the Board to render an informed decision. Barr v. Nicholson, 21 Vet. App. 303, 311 (affirming that a medical opinion is adequate if it provides sufficient detail so that the Board can perform a fully informed evaluation of the claim). Given the foregoing, the Board finds that the VA has complied with the duty to obtain the requisite medical information necessary to make a decision on the appellant’s claim. 

Additionally, in pertinent part, the Board’s previous remands were accomplished so that examinations of the appellant could be accomplished and opinions obtained that reflected consideration of the entire record. The record shows that the most recent examinations were accomplished in November 2014 and February 2015. He is noted to have repeatedly failed to report for special cardiac testing with a no-show noted in June 2013 for VA examinations including cardiac, and following the Board’s remand in February 2014 to afford an opportunity to attend VA examinations, he underwent examinations in November 2014 and February 2015, but these examiners noted the Veteran to have again no-showed for special cardiac testing. VA’s duty to assist in developing the pertinent facts and evidence in connection with a claim is not a one-way street, and the Veteran has a responsibility to cooperate in such development. Wood v. Derwinski, 1 Vet. App. 190, 193 (1991). Under these circumstances, VA satisfied its duty to assist in this regard. Upon review of those examination results taken together, the Board finds that there was substantial compliance with the remand instructions. The Board notes that the United States Court of Appeals for Veterans Claims, hereinafter the Court, has concluded that “only substantial compliance with the terms of the Board’s engagement letter would be required, not strict compliance.” D’Aries v. Peake, 22 Vet. App. 97, 105 (2008). As such, further processing of the appellant’s claim may continue. 

As there is no indication that any failure on the part of VA to provide additional notice or assistance that reasonably affects the outcome of this case, the Board finds that any such failure is harmless. See Newhouse v. Nicholson, 497 F.3d 1298 (Fed. Cir. 2007). Importantly, the Board notes that the appellant is represented in this appeal and over the course of the appeal, the accredited representative has submitted argument on behalf of the appellant. See Overton v. Nicholson, 20 Vet. App. 427, 438 (2006). Moreover, the appellant has submitted argument and evidence in support of the appeal. Based on the foregoing, the Board finds that the appellant has had a meaningful opportunity to participate in the adjudication of his claims such that the essential fairness of the adjudication is not affected.


II. Governing Law and Regulations

Service connection may be established for a disability resulting from disease or injury incurred in or aggravated by active service. See 38 U.S.C.A. §§ 1110, 1131 (West 2014). Service connection may be granted for any disease diagnosed after discharge, when all of the evidence establishes that the disease was incurred in service. See 38 C.F.R. § 3.303(d) (2015). 

The term “active military service” includes active duty, any period of active duty for training (ACDUTRA) during which the individual concerned was disabled or died from a disease or injury incurred or aggravated in line of duty, and any period of inactive duty for training (INACDUTRA) during which the individual concerned was disabled or died from an injury incurred or aggravated in line of duty or from an acute myocardial infarction, a cardiac arrest, or a cerebrovascular accident which occurred during such training. 38 C.F.R. § 3.6(a).

ACDUTRA includes full-time duty in the Armed Forces performed by Reserves for training purposes, while INACDUTRA includes duty (other than full-time duty) prescribed for Reserves, as well as duty (other than full-time duty) performed by a member of the National Guard of any State. 38 C.F.R. § 3.6(c), (d). Presumptive periods for service connection do not apply to ACDUTRA or INACDUTRA. Biggins v. Derwinski, 1 Vet. App. 474 (1991). Thus, service connection may be granted for disability resulting from disease or injury incurred or aggravated while performing active duty or ACDUTRA, or from an injury incurred or aggravated while performing INACDUTRA, but the appellant is not entitled to the application of the presumption of soundness or the presumption of aggravation except for his active duty. 38 U.S.C.A. §§ 101(24), 106, 1110.

Claims based on a period of ACDUTRA or INACDUTRA are never entitled to the presumption of service connection outlined in 38 C.F.R. § 3.307 and § 3.309 nor are they entitled to the presumption of aggravation. Smith v. Shinseki, 24 Vet. App. 40 (2010). Appellants who established “Veteran” status for a prior period of service may be entitled to the presumption of soundness for a subsequent period of service under certain conditions. Id. at 45-46. For claims based on aggravation of a pre-existing condition during a period of ACDUTRA or INACDUTRA, the appellant must show that the condition worsened beyond its natural progression during the period of training and that the worsening was caused by the training. Id. at 48.

In order to establish service connection for the claimed disorder, there must be evidence of (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal connection between the claimed in-service disease or injury and the current disability. See Shedden v. Principi, 381 F.3d 1163 (Fed. Cir. 2004). 

Presumptive service connection is established based on the understanding that certain chronic diseases manifesting themselves to a certain degree within a certain time after service must have had their onset in service. 38 U.S.C.A. §§ 1112, 1113, 1137 (West 2014); 38 C.F.R. §§ 3.303, 3.304, 3.307, 3.309(a) (2015). Cardiovascular-renal disease, including hypertension, is entitled to the chronic disease presumption under 38 C.F.R. § 3.309(a) if it manifests to a degree of 10 percent or more within one year of separation from active service. 38 C.F.R. § 3.307(a)(3). To manifest to a compensable degree, hypertension must result in diastolic pressure of predominantly 100 or more, or systolic pressure of predominantly 160 or more, or the appellant must have a history of diastolic pressure of 100 or more and require continuous medication for control. See 38 C.F.R. § 4.104, Diagnostic Code (DC) 7101.

A veteran will be considered to have been in sound condition when examined, accepted, and enrolled for service, except as to defects, infirmities, or disorders noted at entrance into service, or where clear and unmistakable (obvious or manifest) evidence demonstrates that an injury or disease existed prior thereto and was clearly and unmistakably not aggravated. See 38 U.S.C.A. §§ 1111, 1132 (West 2002); 38 C.F.R. § 3.304(b) (2015). A pre-existing injury or disease will be considered to have been aggravated by active service where there is an increase in disability during such service, unless clear and unmistakable evidence shows that the increase in disability is due to the natural progress of the disease. See 38 U.S.C.A. § 1153 (West 2014); 38 C.F.R. § 3.306 (2015).

“Clear and unmistakable evidence” is a more formidable evidentiary burden than the preponderance of the evidence standard. See Vanerson v. West, 12 Vet. App. 254, 258 (1999) (noting that the “clear and convincing” burden of proof, while a higher standard than a preponderance of the evidence, is a lower burden to satisfy than that of “clear and unmistakable evidence”). It is an “onerous” evidentiary standard, requiring that the pre-existence of a condition and the no-aggravation result be “undebatable.” See Cotant v. West, 17 Vet. App. 116, 131 (2003), citing Laposky v. Brown, 4 Vet. App. 331, 334 (1993). 

To rebut the presumption of soundness, VA must show by clear and unmistakable evidence both that the disease or injury existed prior to service and that the disease or injury was not aggravated by service. Wagner v. Principi, 370 F.3d 1089 (Fed. Cir. 2004).

In a service connection claim, the threshold question is whether the Veteran actually has the disability for which service connection is sought. In the absence of proof of present disability, there can be no valid claim of service connection. See Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992); see also Sanchez-Benitez v. West, 13 Vet. App. 282, 285 (1999) (complaints of pain alone do not meet the current disability threshold).

Regarding the Veteran’s service, the service personnel records reflect that the first period of service from July 1976 to November 1976 was active duty for training while the second period of active service was in support of Operation Iraqi Freedom (OIF) from January 2003 to April 2004. He additionally is shown to have had brief periods of foreign service in Barbados from April 20, 1996, to May 4, 1996, and in Germany in July 1999. 

A. Analysis—Service Connection for Chest Pain

The Board notes that there is no record of an entrance examination for the Veteran’s period of active service from January 2003 to April 2004. The Board acknowledges that the record confirms the Veteran has had episodes of chest pain, including in March 2003 and in May 2003 during his active service when he was diagnosed with atypical chest pain during treatment for an exacerbation of diagnosed chronic obstructive pulmonary disease (COPD) and bronchitis. Service connection is noted to be in effect for both the COPD and a chronic bronchitis. While hospitalized during active duty in March 2003 for the COPD and bronchitis exacerbation, he underwent testing in intensive care to rule out ischemic heart disease and any other cardiac disease, with no acute changes on ECG and negative cardiac enzymes. No heart disease of any type was diagnosed in these records of treatment of his atypical chest pain, COPD exacerbation and bronchitis. His Report of Medical History done in September 2003 for a Medical Board is noted to have no complaints for chest pain, although he did report shortness of breath, chronic cough and other breathing problems associated with COPD/bronchitis. His chest and heart were normal on a routine separation examination report in September 2003. He subsequently was determined to be unable to meet physical requirements for duties due to a diagnosed mild to moderate COPD in an October 2003 Medical Board report, which did not report any cardiac findings or other non COPD/bronchitis related source for chest pain (and did not specifically describe chest pain among the Veteran’s respiratory symptoms). 

After service, the Veteran is noted to have sporadic episodes of chest pain. These include an incident reported in December 2005 when he reported issues of occasional shortness of breath, wheezing and sharp pains on his left side while trying to do walking exercises. He was noted to smoke and was encouraged to engage in smoking cessation. A December 2004 VA examination report addressing his service-connected COPD is noted to have included some chest tightness along with shortness of breath as symptoms associated with his COPD. In April 2006 he was seen for complaints of chest pain over the previous few days and thought he may have been “overdoing myself” having cut grass recently resulting in midsternal chest pain. Following examination this chest pain was deemed to be mechanical in nature as it was made worse with movement of the right arm. 

Of significant note, an August 2008 SSA examination diagnosed COPD, trouble breathing and low back problems. He had some associated chest pains over his left lung or lower chest area. The pain which happened about once a day and occurred in conjunction with wheezing and shortness of breath, as well as under conditions of being too hot or too cold, also was noted to decrease with rest and using medications to treat COPD. The examination was unremarkable for any significant cardiac or pulmonary findings. The assessment from the August 2008 SSA examiner was that his chest pain was likely due to his COPD rather than a cardiac angina. 

The Veteran’s March 2012 Travel Board hearing also described treatment for chest pain and breathing problems when he was activated into service in August 2003 and he blamed exposure to cold conditions after which he caught cold and attended sick call. 

The Veteran failed to report to a VA examination scheduled in June 2013 which was to include cardiac examination to determine the etiology of his chest pain. He did subsequently undergo VA examinations in November 2014 and again in February 2015; however, he was noted in the November 2014 examination to have failed to report for an ECG scheduled in conjunction with the examination. He again failed to attend special cardiac testing in February 2015. No good cause was given to explain his failure to report. Both the November 2014 and February 2015 VA examinations included review of the claims file and interview with the Veteran. No cardiac condition was noted on examination or diagnosed in either examination, although the Veteran self-reported chest pain radiating to his left arm in 2003, accompanied by shortness of breath, and occasional fluctuation of his heart rate in these examination reports. The examiner in November 2014 did note that an interview based METS yielded an estimate 7-10 METS deemed not solely due to cardiac symptoms, with his COPD noted, although it could not be fully determined whether any cardiac or non-cardiac condition impacted the METS due to his failure to report for the ECG. Because of this, a diagnosis or etiology of the Veteran’s chest pain could not be made in the absence of cardiac testing. Likewise, the February 2015 VA examination again found that based on the Veteran’s failure to report for cardiac testing, a diagnosis or etiology of the Veteran’s chest pain could not be provided. 

In view of the foregoing, the Veteran’s claim of service connection for chest pain must be denied as the preponderance of the evidence is against the claim. The evidence reflects that this is not a disability for which service connection may be established. Again the Veteran’s failure to cooperate with cardiac testing in both the November 2014 and February 2015 VA examinations rendered it impossible to make a determination as to the nature and etiology of any underlying disability causing the chest pain. To the extent that other evidence such as the August 2008 SSA examination suggests that the Veteran’s chest pain is an underlying symptom of his already service-connected COPD and bronchitis, the Board finds that a separate grant of service connection for the chest pain would be duplicative and would violate the rule against the evaluation of the same disability, or the same manifestation of a disability, under different diagnostic codes. See 38 C.F.R. § 4.14. Accordingly, the preponderance of the evidence is against the claim and entitlement to service connection is not warranted. 38 U.S.C.A. § 5107(b) (West 2014), 38 C.F.R. § 4.3 (2015).

B. Analysis—Service Connection for Hypertension

Evidence does not show a diagnosis of hypertension to be present during the Veteran’s first period of active duty for training in 1976, or otherwise manifest during any other period of active duty for training. The Veteran is shown to have carried a diagnosis of hypertension a few years prior to his being activated in the service in January 2003. Of note, a National Guard record from October 20, 2001, identified him as requiring physician documentation regarding any restrictions based on his hypertension medications. A December 2001 record also noted him to receive treatment for high blood pressure with the blood pressure reading of 180/110 noted. A March 2002 doctor’s letter also advised his sergeant in the National Guard that he was on medication for high blood pressure, specifically Norvasc and HCTZ. 

The Board notes that there is no record of an entrance examination for the Veteran’s period of active service from January 2003 to April 2004; however, hypertension was noted as a diagnosis in the available service treatment records including his March 2003 hospitalization for exacerbation of COPD and bronchitis, with a history of the hypertension being present for 3 years. Essential hypertension NOS was diagnosed in an April 2003 record addressing his COPD exacerbation. A September 2003 report of medical history in conjunction with a pending Medical Board was noted to include a history given by the Veteran of being diagnosed with hypertension around December 2000 and his blood pressure was noted to be 132/82 on a routine separation examination report in September 2003. An October 2003 Medical Board Evaluation report for chronic dyspnea on exertion, also noted his diagnosis of hypertension, with a history of the Veteran being on atenolol for high blood pressure, which had been changed to Norvasc and hydrochlorothiazide during his treatment in March 2003 for COPD exacerbation. The physician drafting this report noted a past medical history of essential hypertension and indicated that in July 2003 he advised the Veteran to follow up for blood pressure check at the Troop clinic after a reading of 149/92 was recorded and his medication for blood pressure consisted of amlodipine. His blood pressure on this October 2003 examination was 153/81 and the diagnosis was essential hypertension, medically acceptable. This physician is noted to have provided no opinion as to whether this was permanently aggravated by service. 

After service, he continued to carry a diagnosis of hypertension, with a May 2004 Combat Vet SMA noting his hypertension to be not well controlled on Norvasc with a reading of 152/94. Subsequently he was changed medication to Plendil and on follow-up in June 2004 his hypertension was well controlled and was 120/80. Thereafter he is shown to have ongoing treatment for a diagnosed hypertension in the records from 2005 through 2013, with these records generally showing that his blood pressure was usually adequately controlled by medication. None of these records contained any opinion that would tend to suggest that his hypertension was aggravated by any period of active service. These records are noted to show blood pressure readings with diastolic readings mostly below 100 and systolic readings mostly below 160. 

The Veteran’s March 2012 hearing testimony indicated that he was diagnosed with hypertension 10 years earlier and that he continued to treat this condition with medication. 

In November 2014 and in February 2015 the Veteran underwent VA examinations for his hypertension done by the same examiner. The medical history reported in both examinations included that of a diagnosis of hypertension made in 2000 according to the Veteran, at which time he was experiencing elevated blood pressure treated with Norvasc and HCTZ, and which was now controlled with medication. The examiner noted that it was unknown whether the initial diagnosis of hypertension was confirmed by blood pressure readings taken 2 or more times over 3 different days. It was also noted that there was no history of diastolic blood pressure predominantly 100 or more and no other significant findings. Blood pressure readings were noted to be 131/77 in the November 2014 VA examination and were respectively 161/84, 156/91 and 161/96 on 3 readings taken the same day in the February 2015 VA examination. 

The examiner in the November 2014 VA examination gave a contradictory opinion as to whether hypertension was as likely as not incurred in service or caused by an in-service event, injury or illness, in which the answer initially appeared to be positive (suggesting the hypertension was at least as likely as not incurred in service), but the rationale was clearly negative. In the rationale, the examiner pointed to the diagnoses of hypertension made in the records to include post-service diagnoses of hypertension which were noted to be well controlled with current medications in June 2005 and April 2006. The examiner also noted that records from shortly before his period of service beginning in January 2003 included evidence of medication used to treat hypertension noted in November 2002 prior to activation, with a February 2003 record from shortly after activation showing he was already taking prescribed medication for hypertension, with readings of 136/83, 140/72 and 135/80 noted. The examiner concluded that the Veteran’s report does not coincide with documents found in the claims file of high blood pressure having its onset during active service, but the records do support continued treatment for hypertension during service. According to the claims file, essential hypertension had its onset prior to service. Therefore the examiner opined that the hypertension was less likely than not the result of service. This same rationale was repeated in an etiology opinion made in February 2015 which clearly stated an opinion that hypertension less likely than not was caused by or incurred by any claimed in-service injury, event or illness. 

In regards to aggravation an opinion was given in the November 2014 VA examination, with the examiner stating that the claimed condition which clearly and unmistakably existed prior to service was not aggravated beyond natural progression by inservice injury, event or illness. Again the examiner noted the history of the blood pressure readings before, during and after service (as noted above) and re-stated that the Veteran’s report does not coincide with documentation of high blood pressure having its onset in service. The claims file, however, did support continued treatment for hypertension during service. The examiner pointed out that the claims file showed that essential hypertension had its onset prior to service, and that based on available documentation, current blood pressure readings remained stable with an occasional mild elevation. Therefore aggravation was not established. Thus, the examiner opined that it was “less likely than not” that hypertension was aggravated beyond natural progression by service. 

The examiner in November 2014 also noted that she was unable to opine in regards to the hypertension being secondary to or aggravated by chest pain without resorting to speculation because the etiology of the chest pain was unknown based on the Veteran’s failure to report for cardiology testing. Thus there is no need to address whether secondary service connection under 38 C.F.R. § 3.310 is warranted.

As noted above, veterans are presumed to have entered service in sound condition as to their health except for disorders noted at entrance. An examination was not conducted when the appellant entered service; thus, the presumption of soundness does not attach. See Smith v. Shinseki, 24 Vet. App. 40, 45 (2010) (citing Crowe v. Brown, 7 Vet. App. 238, 245 (1994)) (holding that the presumption of sound condition “attaches only where there has been an induction examination in which the later-complained-of disability was not detected” (citing Bagby v. Derwinski, 1 Vet. App. 225, 227 (1991))). To the extent that there is no entrance examination of record for the Veteran’s period of active service from January 2003 to April 2004, his hypertension, for which the medical evidence showed he was receiving medical treatment as early as 2001, is shown to clearly pre-exist this period of service. 

The November 2014 and February 2015 examinations that were accomplished in conjunction with this claim found that the appellant’s hypertension was not the result of his military service; it was not caused by his military service; it was not aggravated by his military service; and, it was not made worse by his military service. Taken together, the examination reports are highly probative because they are based on sound medical principles, as well as a review of the service treatment medical records, the post-service medical records, examinations of the appellant, and the appellant’s uncorroborated statements. 

Although the appellant has expressed disagreement with these assessments, the appellant has not provided any type of medical documents or opinions that would show that his hypertension worsened in service. He has not provided any medical evidence suggesting that the pre-existing hypertension was permanently aggravated during service beyond the natural progression. Although the appellant may assert that his hypertension was less severe prior to service, and became more severe during service, without ever returning to its pre-service level, there is no objective evidence to support a finding of aggravation. 

The Board would point out that generally the VA examiner for the November 2014 and February 2015 examination has not been equivocal, vague, or ambiguous, with the assertions made and in fact the examiner clarified the lone ambiguity as to causation noted in November 2014 by a clear restatement of the negative opinion and rationale in February 2015. No such ambiguity was present in the November 2014 opinion as to aggravation. The examiner has discussed the reasoning and has pointed to medical facts contained in the claims file to support the opinions. The examiner thoroughly reviewed the pertinent medical records, discussed the salient facts, and provided a complete rationale for all conclusions presented, as noted in the discussion above. As such, the Board attaches the most significant probative value to the examiner’s opinions as they are well reasoned, detailed, and consistent with other evidence of record. See Prejean v. West, 13 Vet. App. 444, 448-9 (2000). 

In light of the foregoing, although the Veteran may sincerely believe that his pre-existing hypertension was aggravated during service beyond the natural progression, for all the reasons noted above, the evidence of record demonstrates otherwise. Significantly, a permanent increase in severity is not shown, and, despite the appellant’s assertions that his symptoms were worse immediately following service, there is no evidence of record dated during the period covered by this claim that shows a hypertension disability picture that is any worse than what is shown at the time of entry into service or at the time of discharge from service. As for causation, the Board notes that the evidence shows the hypertension to pre-exist his second period of service beginning in January 2003, but it is not shown to have been present either during his first period of active duty for training service from July 1976 to November 1976 or manifested within any other active duty training period. 

To the extent that he is alleging causation or aggravation of his hypertension from his service from 2003 to 2004, the Board notes that the Federal Circuit, in Jandreau v. Nicholson, 492 F. 3d 137 (Fed. Cir. 2007), determined that lay evidence can be competent and sufficient to establish a diagnosis of a condition when (1) a layperson is competent to identify the medical condition (noting that sometimes the layperson will be competent to identify the condition where the condition is simple, for example a broken leg, and sometimes not, for example, a form of cancer), (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. The relevance of lay evidence is not limited to the third situation, but extends to the first two as well. Whether lay evidence is competent and sufficient in a particular case is a fact issue. In this matter the Veteran is not shown to be a competent medical witness. 

More weight is accorded to the medical records than to the appellant’s competent statements regarding his symptoms. Accordingly, the preponderance of the evidence is against the claim and entitlement to service connection is not warranted. 38 U.S.C.A. § 5107(b) (West 2014), 38 C.F.R. § 4.3 (2015).




ORDER


Entitlement to service connection for chest pain is denied.

Entitlement to service connection for hypertension is denied.



____________________________________________
James L. March
Veterans Law Judge, Board of Veterans’ Appeals



Department of Veterans Affairs